## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT  & CORALINA TICHY, H/W,**<br><br>Plaintiff,<br><br>v.<br><br>**AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC** *d/b/a Anniemac Home Mortgage,*<br><br>AND<br><br>**PENNYMAC LOAN SERVICES LLC**<br><br>AND<br><br>**THOMAS REINHART**<br><br>AND<br><br>**DAMON C. ALLEN,** *individually and d/b/a Finishers*<br><br>AND<br><br>**FINISHERS LLC,**<br>Defendants. | **JURY TRIAL DEMANDED**<br><br>**Civil Case No.  4:19-cv-01385-MWB** |

## FIRST AMENDED COMPLAINT[1]

## I.  INTRODUCTION

1.      The underlying matter involves homeowners seeking to improve their residential property purchased under a 203(k) FHA purchase/renovation loan which was undermined by unsafe and unsound practices of their mortgage lender AnnieMac, assignee of the loan, PennyMac, Consultant Reinhart, and Contractor Allen/Finishers in this matter.  The Defendants

---

[1] *Amended as to correction of typographical/proof errors in original as follows: in caption as to naming of Defendants AnnieMac and PennyMac, and in ¶¶4, 64-65, 83, 114, & 131, and as to striking ¶122.*

placed their financial interest above that of the homeowners and unfairly and deceptively ignored their statutory and contractual duties including those which were agreed to as part of the Federal Housing Administration's (FHA) guidelines underlying the 203(k) FHA mortgage subject to this action and AnnieMac and PennyMac's failure to abide by same.

2.   These foregoing unsound practices are compounded when vulnerable homeowners try in good faith to resolve the situation but the originating lender, Defendant AnnieMac in this case, fails to act in good faith and intends to pass the problem on to the FHA program or blame others for failures that it has the legal duty to select and supervise and willfully blinds itself to material facts. After their reasonable efforts to mitigate their mortgage situations are ignored or thwarted, homeowners like the Plaintiffs are left with no other option but to seek the assistance of the Courts.

3.   The subject practices include the unlawful conduct by AnnieMac which unfairly and deceptively deprived plaintiffs of the loan funds to which they were entitled to complete work defectively supervised and performed by AnnieMac and its agents and third parties under the mandatory requirements of the FHA program for which the loan was underwritten.

4.   The subject practices also include the unlawful and bogus Work Write Up conducted by AnnieMac's designated Consultant which infected the transaction and unfairly and deceptively concealed material information from Plaintiffs which AnnieMac had a duty to disclose but failed to do so. As a result, Defendant AnnieMac's loan to Plaintiffs was unsuitable, unfair, and deceptive for their particular circumstances. Had AnnieMac and its authorized Consultant followed the FHA inspection guidelines, Plaintiffs would have not obtained the underlying mortgage and would not be at risk of losing their home and property to potential foreclosure.  Simply put, the underlying mortgage arranged by AnnieMac was unsuitable for the

Plaintiffs and their circumstances based upon the condition of the property and the mandatory requirements of the FHA program for which the loan was underwritten.

5.      These claims concern the utter failure of Defendants collectively to perform within their duties at law and by regulation and as a result of their failure to do so the Plaintiffs have suffered damages and losses which otherwise could have been avoided.  These damages and losses include: (i) loss of home equity as a result of AnnieMac's unfair transaction; (ii) loss of income as a result of AnnieMac's unlawful underwriting and handling of the FHA transaction; (iii) deprivation of loan funds; (iv) Plaintiffs personal injuries sustained when plaintiffs were forced to perform most of the renovation work on their own; and (v) significant emotional damages, with physical manifestations in plaintiffs such as injury, stress, sleeplessness, anxiety, depression, etc., by being forced to remediate the wrecked condition of the property that should have been prevented by AnnieMac fairly and competently supervising the loan.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction asserted because Defendants transact business and perform work, have interests in real property and provide services in Pennsylvania and Columbia County.

7.      Venue is appropriate in this district because the Defendants conduct business within the Commonwealth of Pennsylvania directly and indirectly through referrals from their partners and agents who practice in this jurisdiction on their behalf.

### PARTIES

8.      Plaintiffs ROBERT & CORALINA TICHY, are, at all times herein and presently husband wife and residents and owners of the property located at 180 Amron Drive, Bloomsburg, PA ("the Property").

9.      Defendant American Neighborhood Mortgage Acceptance Company, LLC d/b/a AnnieMac Home Mortgage ("AnnieMac") is a mortgage lender and servicer headquartered in Marlton, New Jersey that regularly conducts business in Maryland, and presently services the Tichy mortgage as escrow agent for PennyMac.   AnnieMac is licensed by the Pennsylvania Department of Banking as a Mortgage Lender (#33587) and is an FHA approved 203k mortgage lender.

10.     PennyMac Mortgage LLC ("PennyMac") is a mortgage lender/broker conducting business in Maryland during the periods relevant to this action.  At all times relevant for the claims asserted in this action, PennyMac is the assignee of the loan for the Property from Defendant AnnieMac.

11.     Defendant Thomas Reinhart ("Reinhart") is a FHA-approved single family Consultant, i.e. a "construction manager" who oversees and inspects the rehabilitation project from start to finish. Reinhart was the firm that performed the FHA Consultant inspection of the Property on behalf of Defendants AnnieMac and PennyMac for the time period described herein.

12.     Defendant Damon C. Allen ("Allen") individually and DBA the fictitious name of "Finishers", which name is registered with the Pennsylvania Commonwealth Department of State, was the Pennsylvania licensed contractor (Lic. No. 20288) hired by Plaintiffs at the recommendation of AnnieMac to be the Contractor for the 203k loan as described herein. Allen resides at and/or conducts principal business operations at 457 E Main St., Catawissa PA 17820.

13.     Defendant Finishers LLC ("Finishers") was the Pennsylvania licensed contractor hired by Plaintiffs with Allen at the recommendation of AnnieMac to also be the Contractor for the 203k loan as described herein.

## FACTS

### A.   FHA 203(K) RENOVATION LOANS GENERALLY

14.    After a consumer borrower selects a property and makes a loan application with an FHA approved lender, the FHA lender is obligated to select a 203(k) Consultant to visit the property with the borrower.

15.    After that visit, the Consultant prepares a "Work Write-up" and feasibility study outlining the scope of work in order to reasonably ensure that the 203(k) loan provides sufficient funds to renovate the purchased property in accordance with HUD Minimum Property Standards and other governmental health and safety standards.

16.    The borrower then hires a contractor who is willing to agree to or provide a bid for the work described in the "Work Write-up" and provide same to the lender in order for the latter to process, underwrite, close and fund the transaction which is then insured by the FHA insures the loan.

17.    Thereafter, the improvement to the property begins and must be completed within six (6) months.

18.    After the Contractor completes the first phase of the project, the borrower prepares a Draw Request form individually or by and through the 203(k) Consultant.

19.    Thereafter, Consultant inspects the work completed at this point by contractor prior to Consultant and home owner signing the Draw Request and submitting it to the lender for payment to borrower and contractor.

20.    This work review and draw process continues until the work is complete as verified by the Consultant and the Final Draw is requested based thereon so that the borrower can provide a Release letter to release the remaining loan funds.

**B.** **DEFENDANT ANNIEMAC'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION**

22.     As an FHA approved mortgage lender (¶ 8), AnnieMac has a responsibility to

verify that the contractor:

- Is qualified and able to complete the project.

- Meets the state and local licensing, bonding and insuring requirements for the type of work to be performed.

- Is reviewed as to his or her credentials, work experience, and client references.

HUD Handbook 4000.1[2] Sec. II.8.vi.(H)(1), and Sec. II.8.vii.(C).

23.     Furthermore, as related by HUD in a letter to Plaintiff in February 2019:

Since the Standard 203(k) program involves substantial and complex rehabilitation, HUD looks to the mortgage lender to play an active role in assuring that construction work progresses on schedule and in a professional workmanlike manner. The lender has the primary responsibility to address complaints and they are encouraged to intercede early in disagreements between borrowers, contractors and 203(k) consultants.

**C.** **DEFENDANT DAMON ALLEN AND FINISHER LLC'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION**

24.     Defendants Allen and Finishers have a responsibility to ensure compliance with

the following FHA requirements:

- Execute Homeowner/Contractor Agreement;

- Complete work in accordance with agreed contract;

- Financially able to support the upfront labor and material costs for the project;

- Provide detailed written estimate of work to be completed;

- Provide licensing, bonding, and reference information to lender;

- Obtain permits if not obtained by the borrower.

---

[2] Effective Date 9/15/16, Last Revised 3/27/19

HUD Handbook 4000.1 Sec. II.8.vi.(H)(1) and Sec. II.8.xiv. (B)(1)

**D.    DEFENDANT REINHART'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION**

25.    As an FHA approved 203(k) Consultant, Defendant Reinhart has a responsibility to ensure compliance with the FHA requirements of preparing a Work Write-Up and Cost Estimate which first addresses health and safety issues and then address improvements desired by the borrower.

HUD Handbook 4000.1 Sec. II.8.vi.(C).

**E.    ORIGINATION OF PLAINTIFFS' 203K LOAN**

26.    On or about August 2017, Ms. Tichy upon seeing home was referred by her realtor for FHA 203k mortgages which upon information and belief was a promotion from Defendant AnnieMac.

27.    As part of the Plaintiff's application process with Defendant AnnieMac, Defendant AnnieMac was required to perform an appraisal of the Property.

28.    However, due to AnnieMac's delay in securing the appraisal of the Property, plaintiffs lost their designated contractor and asked AnnieMac and its authorized representatives, including upon information and belief Dan Pacheco, for recommendation of another contractor to perform the renovations.

29.    In the course of their communications with AnnieMac and its authorized representatives, including upon information and belief Dan Pacheco, directly represented that Damon Allen was a HUD approved contractor and was vetted as were all such contractors to determine if they had experience and financial ability to handle large scale renovations characteristic of 203k renovation loan projects.

30.     Ms. Tichy reasonably relied upon the representations identified in the preceding paragraph since they were made directly and indirectly to her by Defendant AnnieMac, who are licensed mortgage professionals, and were in a far better position than Ms. Tichy to know if the Contractor they were selling her was approved and suitable for the scope of renovations required for Plaintiffs' FHA 203k mortgage loan.

31.     Based upon this foregoing reliance, the Tichys applied for and closed on December 20, 2017 the FHA 203k mortgage offered by Defendant AnnieMac to purchase and renovate the Property.

32.     Thereafter, AnnieMac assigned ownership of the loan to Defendant PennyMac.

33.     On or about September 17, 2017, Plaintiffs met with defendant Reinhart, who AnnieMac had previously designated as her 203k Consultant, and provided him with complete access to the Property for the purpose of conducting the FHA feasibility study required by HUD regulations to determine if the Property qualified for a 203k renovation loan.

34.     On or about October 11, 2017, Reinhart prepared a Work Write-Up describing $60,000 in renovations to be financed by the 203k loan from AnnieMac.

35.     On or about October 27, 2017, Plaintiffs met with Allen, and provided him with the Work Write-Up and complete access to the Property for the purpose of conducting an inspection.

36.     Allen agreed to perform the work specified in the Work Write-Up for $60,000.00 in four (4) draws.

37.     On or about January 4, 2018, Allen commenced work on the Property.

**F.**   **DISBURSEMENTS FOR IMPROVEMENTS**

38.   On or about February 2, 2018, Reinhart, based on inspection, prepared Change Request 1 to pay Allen $3,500.00 for framing, exterior wall treatment, and install a new electrical panel.

39.   On or about February 3, 2018, Reinhart approved Draw Request 1 to pay Allen $3,250.00 for work previously performed.

40.   Annie Mac refused payment of Change Request 1 due to Allen having failed to secure a permit from PP&L with a job number to perform the electrical work which would have required PP&L to cut power and then restore power after its final inspection.

41.   On or about February 5, 2018, examination by County code enforcer Steve Bielski of Tri County Inspection determined that Allen's electrical panel installation was grossly defective and required repairs to pass a rough-in electrical and panel inspection in addition to the work specified in Change Request 1.

42.   In contravention of his duty and responsibilities, Reinhart failed to inspect Allen's foregoing electrical work in accordance with local health and safety guidelines and local building codes as required by Inspector Bielski and failed to approve the necessary repairs to pass the rough-in electrical and panel inspection recommended by Inspector Bielski.

43.   On or about February 8, 2018, AnnieMac communicated to Plaintiffs that widespread electrical wiring issues were called to their attention by Inspector Bielski, including but not limited to the attention of AnnieMac's Scott Magee.

44.   Upon information and belief including the inspection and opinions of Inspector Bielski, Defendant Reinhart's Feasibility Study and Work Write-Up were deficient in that they

failed to adequately address all electrical renovation issues in the scope of work required for the Property to be habitable in accordance with Health and Safety standards.

45.     Thereafter, Plaintiffs asked AnnieMac to replace Reinhart as Consultant because the corrective electrical work should have been part of the initial scope of work in the Work Write-Up.

46.     AnnieMac refused to release funds to pay for the corrective electrical work and instead required Allen to advance labor and materials to accomplish it.

47.     When Plaintiffs advised AnnieMac that Allen was financially unable to accomplish the corrective electrical work and therefore requested authority to terminate Allen as Contractor, AnnieMac refused to replace Allen and instead required plaintiffs "to do what they had to do" to accomplish the work to pass the rough-in electrical inspection.

48.     Thereafter, Plaintiffs advanced $11,000 for labor and materials to Allen to perform the electrical work to pass the rough in electrical inspection as well as to make his payroll and perform other work he was incapable of performing due to his inadequate financial condition.

49.     On or about late March 12, 2018, Reinhart approved Change Request 2 to pay Allen $5,650, $6,266, as well as approve payment to Allen of $3,500 for Change Request 1.

50.     On or about late March 12, 2018, following plaintiffs' written complaints to AnnieMac of Reinhart's numerous failures to ensure the renovations' compliance with 203k standards, AnnieMac fired Reinhart as the 203k Consultant for plaintiffs' loan.

51.     In contravention of his duty and responsibilities, Reinhart failed to properly inspect Allen's work product in conformance with FHA and state and local guidelines governing

health and safety thereby resulting in over $10,000 in electrical work that was nonfunctional and noncompliant with local building codes.

52.     On or about March 13, 2018, AnnieMac assigned Steven DePaul as the new 203k Consultant for the Property.

53.     On or about March 23, 2018, DePaul approved Draw Request 3 to pay Allen $11,221.00 for drywall work performed.

54.     On April 3, 2018, plaintiffs paid for the necessary materials Allen refused to pay for in order to have the Property renovations complete by the contract date of June 1, 2018.

55.     Thereafter Allen failed to appear at the Property for the purpose of doing any further work and instead only appeared to use the dumpster located there, once doing so in an inebriated state.

56.     In the meanwhile, Plaintiffs discovered numerous instances of damage to the Property caused by Allen.

57.     On or about April 15, 2018, Plaintiffs' two (2) year old daughter, Addison, was shocked by a bedroom outlet in the Property damaged by Allen.

58.     On or about May 6, 2018, Plaintiffs sought and obtained approval from AnnieMac to terminate Allen as Contractor based on the foregoing issues by means of certified letter to Allen.

59.     On or about late May 10, 2018, plaintiffs terminated Allen as Contractor.

60.     With less than one month remaining to complete the renovation work due to the deficiencies in Allen's work product and to complete the overall repairs required by the Loan, Plaintiffs were unable to hire another contractor in that tight one month time frame.

61.     Accordingly, Plaintiffs gained the approval of AnnieMac to complete the work to avoid default on the Loan and loss of the Property.

62.     On or about May 15, 2018, Mrs. Tichy was shocked by an improperly installed electrical traveler wiring causing in a light switch causing nerve damage injury to her right hand.

63.     On or about, May 19, 2018, DePaul conducted an inspection of the Property.

64.     DePaul's most significant conclusion was that the electrical work was not performed to code and that Allen's drywall installation would have to be torn out and redone, Improper plumbing and framing work by Allen also required revision, see attached hereto as.

65.     On or about May 19, 2018, DePaul determined that Allen as the Contractor was due no further funds from the transaction.

66.     Allen signed off on the document confirming that he and his company, Finishers, collectively as the Contractor, was due no further funds from the transaction.

67.     On or about June 5, 2018, Plaintiffs requested of AnnieMac and AnnieMac obtained from HUD an extension until August 20, 2018 for plaintiffs to complete the 203k renovations.

68.     However, before plaintiffs could obtain funds from the loan to complete the 203k renovations, plaintiffs first had to complete reclamation work to correct Allen's errors, primarily with regards to the Property's septic, plumbing, electrical, framing, and HVAC systems. To do so, beginning May 2018, Plaintiffs took off a total of approximately sixty (60) days from their respective jobs, took out ten (10) loans from family in a total amount required of $30,000, and charged on credit cards approximately $40,000 to pay for the materials and labor required to complete the renovations in the Work Write-Up and associated Change Orders.

69.     On or about June 6, 2018, Plaintiffs requested in an email of AnnieMac and AnnieMac, in an email sent on or about June 7, 2018, approved the plaintiffs' self-help renovations although it failed to provide Plaintiffs with the required Self-Help Agreement required by HUD.

70.     On or about June 25, 2018, plaintiffs made Draw Request 4 (Ex. ___) to AnnieMac for $31,000 from remaining undistributed loan funds.

71.      On or about June 26, 2018, AnnieMac denied Draw Request 4 on the pretext that Allen had called AnnieMac claiming he was due further funds for the renovations at the Property for which AnnieMac speculated Allen could place a mechanics lien on the Property despite the glaring and overwhelming contrary evidence of the Exit Inspection in which Allen had agreed with the AnnieMac Consultant that he was owed no further funds and the fact that AnnieMac had approved, just weeks prior, self-help reclamation by plaintiffs of Allen's abominably deficient work product (see ¶66 above).

72.     Additionally, AnnieMac insisted that Plaintiffs hire legal counsel to pursue Allen for a Court determination that Allen was due no further funds for his work and that therefore Allen had no further claim against AnnieMac for payment of such funds. To facilitate said legal action against Allen, AnnieMac approved a draw from the Loan of $11,000 for the purpose of plaintiffs retaining a lawyer to pursue Allen. There was no factual basis or basis in the HUD/FHA guidelines or regulations to support AnnieMac's actions in this regard.

73.     Due to AnnieMac's refusal of the Draw Request 4 and the consequent need for plaintiffs to pay out of pocket for the aforesaid reclamation work to the Property, Plaintiffs could not afford to continue paying rent for their then current residence and, in reliance upon

Defendant AnnieMac's representations, were forced to leave that residence in a week's time to move into the Property with their family.

74.     Also, beginning in June 2018 and through August 2018, in reliance upon Defendant AnnieMac's representations, Plaintiffs undertook completion of the following reclamation work necessary to help render the Property habitable by Plaintiffs and their family:

*Main Floor* **(4 bedrooms, hall, foyer, living room, kitchen, dining room, 2 bathrooms)**
- Repair drywall and reinstall where cut for electrical installations, spackle and sand
- Add window insulation and repair frames, add window trim
- Remove, clean and repair windows and screens
- Install flooring
- Install base trim
- Install door jams, doors, doorknobs
- Reframe bathroom and bedroom door
- Install door & window trim throughout
- Install closet tracks and doors
- Paint walls, ceiling, doors and all trim
- Remove all vents, clean sand and paint the vents
- Clean Air Ducts
- Treat interior and exterior for insects, termites
- Removed flooring in 4 bedrooms, stairs and foyer
  - Leveled subfloor in small bedroom
  - Removed Asbestos tiles in office
- Sand and stain woodwork and banister
- Sanded and painted entryway door and side windows
- Remove existing sliding glass door and Install new door and frame
- Install interior and exterior door trim, caulk
- Clean debris and trash from contractor
- Electrical
  - Living room outlet had to be traced, reconnected to feed circuit and corresponding switch had to be rewired and replaced
  - Hall light switches were wired incorrectly with cross travelers and had to be traced and rewired
  - Hall light switch by addition had to be rewired to a three-way, live wires were left hanging in junction box
  - Foyer lights had to be traced and rewired, live wires left hanging from wall
  - Travelers had to be corrected for fan/ light,
  - Three-way switch at bottom of stairs had to be traced and rewired and travelers corrected

- o   Installed all bathroom, kitchen, dining room, bedroom, and hall light fixtures

*Master Bathroom*

- Repair shower enclosure wall extend wall and install shower enclosure
- Caulk and Install shower enclosure trim
- Repair damaged skylight drywall
- Remove wallboard and reinstall with green board throughout
- Assemble vanity and install
  - o   Repair damaged drawers and dents of vanity
- Install countertop and sink
- Cut subfloor and repair cut septic pipe and repair subfloor
- Unclog septic pipes
- Repair feed lines and drain pipes
- Install shower faucet and sink faucet
- Remove and install toilet
- Spackle, sand, paint walls and ceiling
- Electrical
  - o   No junction box for thermostats or vanity lights. They had to be wired and installed
  - o   GFI receptacle was installed
  - o   Wiring incomplete for the fan and light switches and had to be completed

*Hall Bathroom*

- Remove wallboard and reinstall with green board throughout
- Reframe broken bathtub enclosure and water closet
- Remove bathtub and reinstall according to installation Instructions
- Complete framing of closet installs door jam and closet track and door
- Install Vanity, countertop and sink
- Install Toilet
- Repair damaged feed lines and drain pipes,
- Install shower faucet and sink faucet
- Install all bathroom accessories
- Caulk all installations
- Install door, window, base and bathtub trim
- Spackle, sand, paint walls and ceiling
- Electrical
  - o   Vanity lights didn't have junction boxes and holes exceeded max clearance, they had to be relocated and installed
  - o   Baseboard heater feed wires were damaged and had to be relocated
  - o   Light and fan switch had to be rewired
  - o   The GFI receptacle would not feed downstream receptacles. It had to be traced, rewired and outlet replaced

*Kitchen*
- Purchase, transport and assemble kitchen cabinets
  - o Install kitchen cabinets
    - ▪ Wallboard was not level or square, wall was built not to plan, and pipes were cut making installation of cabinets extremely difficult
- Electrical
  - o Receptacle junction boxes over cabinets had to be relocated, junction boxes and outlets installed
  - o Microwave outlet had to be relocated and installed
  - o Dishwasher circuit was hanging in the Joyce's was not connected to panel, it had to be traced, rewired and outlet installed
  - o Added 2 GFI breakers to panel for kitchen appliance outlets
  - o Trace and Rewire overhead lighting in kitchen it was not connected to the coordinating switches
  - o All countertop light switches and receptacles had to be relocated and installed. They were not to plan and would have been blocked by kitchen cabinet installation.
  - o Patio light had to removed and not replaced
  - o Three-way light switch had traveler incorrect and had to be traced and rewired
  - o Outlet on island was not connected to junction box and receptacle had to be installed
  - o The junction boxes were reused from old construction and had to be replaced

*Basement (Den, playroom, utility room and laundry room)*
- Add insulation to exterior walls and soffit
- Complete closet construction (2)
- Frame both windows and secure windows to frame
- Complete drywall and install drywall that was cut during electrical installations
- Install 4 door frames and jams
- Install 2 steel door frames, door & knob
- Install closet doors & knobs
- Install door, window, base trim
- Scrape and paint floor
- Repair mortar on fireplace
- Paint interior and exterior of fireplace, caulk and frame
- Assemble and install laundry room cabinets
- Install laundry room sink
- Install laundry room counter (used laundry room as temporary kitchen)
- Electrical
  - o Installed water heater to code
  - o Light feed switch shorted out in electrical box and had to be rewired
  - o GFI Receptacles had to be installed
  - o Washer receptacle had to be relocated

- o Dryer outlet had to be installed
- o All outlets had to be installed
- o Stairwell closet installed junction box and completed wiring
- o Install laundry room light
- o Installed light in utility room

*Attic*

- Frame scuttle access to attic
- Remove damaged attic fan
- Sealed holes in attic
- Temporarily patched broken AC ducts

*Exterior*

- Patched holes in roof with tar
- Attached ridge vent
- Clean, repaired gutters and downspouts
- Caulk all flashings
- Graded front of home near windows
- Cut dead trees and limbs away from home
- Pressure wash home and deck
- Septic Tank pumped out
- Repair main septic pipe exiting the home
- Dig out and repair curb key
-  Remove leaking exterior faucet and install new faucet and connections
- Install garage man door frame, door, doorknob and lock
- Temporarily fix garage door track
- Install exterior door trim
- Remove debris, moldy wood etc. from under deck
- Remove pool liner and drain standing water
- Electrical
  - o Repair air handler on air conditioning unit it was rewired incorrectly
  - o Patch cracks in foundation
  - o All wires from the electrical panel had to be retraced and labeled before electrical work could begin
  - o Space saving breakers had to be installed to make room for dual pull breakers for heat and air handler
  - o 3 GFI breakers had to be installed
  - o Garage door opener outlet had to be replaced
  - o Porch receptacles had to be replaced with GFI outlet
  - o Front porch light installed

75.     Thereafter in August 2018, the Property's basement flooded because of Allen's failure to properly connect the Property's plumbing to the septic system and also because of damage he caused to the Property's septic pipes all of which failures and damage was concealed by Allen and revealed only by and in the aftermath of the flood.

76.     Plaintiffs' homeowners' insurer denied plaintiffs' claim due to a policy exclusion for defective contractor work. Allen's liability insurer has denied the claim because Allen refuses to allow a claim to be placed with his insurer.

77.     Due to the septic leak and flooding described, on or about early August 2018, plaintiffs consulted with two (2) different septic system companies to inspect the property's system and estimate any cost of repair and/or replacement if required.

78.     Both companies found drain pipes unconnected to the septic system and the system's dysfunctional state otherwise causing waste water drainage directly into the ground surrounding the property causing waste water was leaking into the ground requiring the system's replacement with a sand mound system and consequent upgrade of the home's electrical panel to accommodate same at an approximate cost of $30,000.00.

79.     Also, Allen caused damage to the Property's wiring requiring re-wiring to make the HVAC system functional.

80.     The foregoing HVAC and plumbing/septic system issues have only been partially and inadequately repaired by plaintiffs to the extent their limited resources permitted.

81.     AnnieMac continues to refuse any further draws by plaintiffs due to its claimed fear of legal action by Allen to recover payment for work performed.

82.     To date, AnnieMac has refused to release to plaintiffs the $30,000 it retains in loan funds.

83.    Based on the foregoing facts, the Feasibility Study, and Work Write-Up, falsely characterized, affirmatively or by gross omission, the following health and safety conditions of the Property which now require tens of thousands in repairs or replacement, including but not limited to:

    a.   Septic system defects previously discussed herein;

    b.   Rear bedroom modular addition, constructed without permits or plans and consequently lacking access to the crawl space for full inspection, displays obvious foundation and inadequate slope/water drainage issues requiring likely tear down of the addition rather than repair;

    c.   Defective construction of the rear deck

    d.   Electrical repairs remaining.

84.    Had the Defendants not acted unfairly and deceptively, the plaintiffs would not have purchased the home.

85.    As indicated by an April 16, 2019 letter from HUD, AnnieMac and PennyMac have been lying to HUD concerning the above described self-help work it approved plaintiffs to engage in as reflected by HUD stating therein:

> "We requested the mortgage lender, AnnieMac Home Mortgages and PennyMac, investigate your complaint and advise us of their findings and plans to resolve these issues.
> …
> The lender has also reported that you have deviated from the work write-up without their knowledge and without preapproved change orders in violation of the loan terms."

86.    Also indicated in the aforesaid HUD letter is the following regarding Consultant Reinhart's actions:

> "The 203k Consultant's performance in this case is currently under administrative review by the Department and we are prohibited from sharing the review."

87.    At all times herein, the Tichys have acted reasonably and in good faith.

**G.      Personal Injuries to the Tichys**

88.      During the course of the work, Plaintiff Mr. Tichy sustained repeated use injury to his hands causing carpal tunnel/orbital tunnel that require surgical repair.

89.      Plaintiff Mr. Tichy also could not work for approximately one (1) month after he fell and hurt his back on or about July 4, 2018 while conducting renovation work at the Property which fall caused severe bilateral facet atrophy requiring an as yet unperformed spinal fusion surgical repair.

90.      After her husband's injuries, Plaintiff Mrs. Tichy had to perform the majority of renovation work remaining by taking an unpaid leave of absence for approximately thirty (30) days total from her employment in June and July 2018.

91.      During the course of work in May and June 2018, due to repeated use tasks and the aforementioned electrical shock she suffered, Plaintiff Mrs. Tichy also experienced carpal tunnel/orbital tunnel injury requiring surgery for which she underwent surgery requiring six (6) weeks leave from her job in order to recuperate.

**H.      Economic Damages to and Losses for the Tichys**

92.      By having to work for months to gut large sections of the Property and complete 90% of the required repairs and renovations to render it safe for human habitation, plaintiffs have suffered the physical injuries previously described.

93.      Plaintiffs have also suffered significant non-economic damages and losses related to the stress and emotional damages caused by the collective Defendants' acts and omissions and Defendants' unfair and deceptive practices and misstatements discussed above.

94.       The unlawful conduct of Defendants described above has caused actual economic damages to the Tichys.  These damages and losses, detailed herein, include:

a. Tens of thousands in costs of extensive further replacement and repair of health and safety issue in and around the property which are not feasible given the amount that such repair and replacement costs will exceed the current value of the 203k loan to purchase and repair the home which currently exhausts plaintiffs' equity in the property;

b. Damage to credit caused by having to borrow funds to complete renovations while Defendant AnnieMac unlawfully refused to release $30,000 in loan funds;

c. Over $75,000 in borrowed funds to pay for materials and labor to correct and complete renovation work sufficient to render the Property habitable;

d. Total lost wages in excess of $35,000.00 for both plaintiffs for the time taken off to correct and complete renovation work sufficient to render the Property habitable.

e. Incurred thousands in legal expenses to needlessly investigate and dispute Contractor Allen's work performance when no such efforts were reasonably required to mitigate a situation which had already been determined by AnnieMac's Consultant against Allen and Finishers as far as any further compensation for work Allen and/or Finishers performed.

## CAUSES OF ACTION

### COUNT I
**VIOLATION OF PENNSYLVANIA'S HOME IMPROVEMENT CONSUMER PROTECTION ACT ("HICPA") &**
**UNFAIR TRADE PRACTICE CONSUMER PROTECTION LAW ("UTPCPL")**

95. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

96. The mortgage loan origination practices described herein related to Defendants constitute trade and commerce under the UTPCPL, 73 P.S. §§201-2.

97.     The UTPCPL, 73 P.S. §§201-2(4) prohibits unfair or deceptive trade practices in the extension of consumer credit such as the 203(k) mortgage provided by Defendants AnnieMac and PennyMac, and also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those performed by Defendants Reinhart, Finishers, and Allen in this action.

98.     Defendants made materially false, misleading oral or written statements or other representations, directly and indirectly through authorized agents and employees, concerning or related to the suitability of the 203(k) renovation mortgage for plaintiffs' circumstances including but limited to the value, marketability, and condition of the Property and cost of its renovation which had the capacity, tendency, or effect of deceiving or misleading the Tichys to purchase the property in violation of the UTPCPL including those described *supra,*

  a) As to Defendant AnnieMac directly and indirectly in ¶¶27-30, 42-45, 56, 62-64, 68-70, 79;

  b) As to Defendant PennyMac directly and indirectly in ¶85.

  c) As to Defendant Reinhart directly and indirectly in ¶¶31, 35-41, 47;

  d) As to Defendant Allen in ¶¶23, 54, 68.

99.     The home improvement transaction described above herein occurring between plaintiffs as Owners/Borrowers and defendants Allen and Finishers, the latter, collectively as Contractor, are governed by Pennsylvania's Home Improvement Consumer Protection Act, 73 P.S. § 517.2 ("HICPA").

100.     Defendants AnnieMac and PennyMac are each the assignee of a home improvement loan contract and, under statutory and common law principles of assignee liability, liable for the actions of Contractor.

101.    Defendant Contractor engaged in acts prohibited by HICPA, 73 P.S. § 517.9, in that they:

a)  Prepared, arranged, accepted or participated in the financing of home improvements contract with knowledge that the home improvement contract stated a greater monetary obligation than the actual price of the home improvements, 73 P.S. § 517.9 (7);

b)  Engaged in home improvement fraud as defined by 73 P.S. § 517.8 (a) by defrauding or injuring plaintiffs or with knowledge that they were facilitating a fraud or injury to be perpetrated by anyone, by making a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price.

102.    Defendants' violation of 73 P.S. § 517.9 by commission of the aforesaid prohibited acts is deemed a per se violation of the Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL).

103.    Defendants engaged in the foregoing deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from plaintiffs with the intent that they rely upon the same during the purchase of the Property mortgage and application for and acceptance of the 203(k) renovation loan and related consumer services.

104.    Plaintiffs reasonably relied upon the material acts and actions of the Defendants as exemplified by their actions described herein.

105.    Had the Defendants not acted unfairly and deceptively, the plaintiffs would not have incurred the mortgage loan to purchase and renovate the home, ¶¶48, 67, 69.

106.    Defendants' conduct and omissions, as set forth above, had the capacity, tendency or effect of damaging plaintiffs as more fully described herein.

## COUNT II - FRAUD

107.    Plaintiffs incorporate all facts and allegations set forth elsewhere in this Complaint.

108.    Before the 203k loan and renovation transaction, Defendants' agents, including but not limited to those identified herein above and on related loan records, intentionally and/or recklessly, expressly or impliedly, misrepresented to the plaintiffs:

a.    That the Property's renovation for $60,000 was economically feasible to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan;

b.    That the Property's purchase price was fair market value of the Property given its condition and actual required repairs to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan;

c.    That the loan was undergoing standard underwriting review under HUD 203k guidelines when, in fact, the aforesaid parties conspired to conceal  required repairs to bring the Property within HUD/FHA Minimum Property Standards supporting a 203(k) loan so as to rig the loan submission to pass underwriting and thereby bypass AnnieMac's underwriting proscriptions and conditions as to 203k standard purchase and renovation loans.

109.    At all times relevant, and in response to plaintiffs' questions about the loan, renovations, and decisions of personnel suggested, recommended, maintained, or assigned by defendants and the defendants' agents, defendants concealed from the plaintiffs the foregoing facts about the property, its purchase price and fair market value, and the price, nature, and

extent of the renovations to comply with public safety standards and 203k statutory requirements.

110.    The defendants' representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the plaintiffs, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

111.    Defendants knew or should have known that the property was in a defective condition based on:

    a.   their inspection of and the property;

    b.   its prior significant history as a unoccupied foreclosed property;

    c.   their reputation;

    d.   their experience in the relevant respective trade and mortgage industry.

112.    Defendant knew that the plaintiffs had no special knowledge in the purchase and condition of automobiles and would rely on their representations.

113.    The plaintiffs relied on Defendants' misrepresentations and were induced to purchase the aforementioned automobile at the inflated amount listed in the purchase agreement.

114.    The defendants' actions as hereinbefore described, including but not limited to concealing the foregoing facts about the property, its purchase price and fair market value, and the price, nature, and extent of the renovations to comply with public safety standards and 203k statutory requirements, were reckless, outrageous, willful, and wanton, thereby justifying the imposition of punitive damages.

115.    PennyMac is vicariously liable for the Acts of AnnieMac pursuant to the express terms of the Note and Mortgage contract, state common law of assignments, and federal statutory

law, PennyMac "stepped into the same shoes" of AnnieMac and became derivatively, jointly, severally and fully liable for all of AnnieMac's misconduct.

116.    As a result of the aforementioned conduct, the plaintiffs suffered the damages outlined above and below in addition to extreme mental anguish, frustration, humiliation, embarrassment and stress.

## COUNT III
## CONSPIRACY TO COMMIT FRAUD

117.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

118.    AnnieMac and Reinhart conspired with one another to misrepresent the condition of the Property and the feasibility of the 203k loan as follows:

    a)  Misrepresented that the Property's renovation for $60,000 was economically feasible to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan;

    b)  Misrepresented that the Property's purchase price was fair market value of the Property given its condition and actual required repairs to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan;

    c)  Misrepresented that the loan was undergoing standard underwriting review under HUD 203k guidelines when, in fact, the aforesaid parties conspired to conceal required repairs to bring the Property within HUD/FHA Minimum Property Standards supporting a 203(k) loan so as to rig the loan submission to pass underwriting and thereby bypass AnnieMac's underwriting proscriptions and conditions as to 203k standard purchase and renovation loans.

119.    The agreements among defendants described above constituted a combination of two or more persons acting with common purpose to do unlawful acts (falsify work write ups)

and to do lawful acts (originate 203k mortgage loans) by unlawful means (in violation of the UTPCPL, Pennsylvania common law, and federal HUD guidelines).

120.     Defendants committed overt acts in pursuance of the common purpose as set forth above.  The overt acts include but are not limited to, affirmatively or by omission, AnnieMac and Reinhart excluding in the Work Write Up numerous prominent health and safety conditions of the Property, including but not limited to the defective and damaged septic system, the structurally unstable and damaged rear bedroom modular addition, defective construction of the rear deck, and electrical repairs.

121.     The illegal agreement among the Defendants and each illegal and deceptive act taken by the Defendants in furtherance of the illegal agreement regarding the loan constitute deceptive acts and practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.92(a).

122.     Plaintiffs, without prior knowledge of home improvement contracting or consumer mortgage lending, justifiably relied upon Defendants' misrepresentations that the 203k renovations and purchase were within 203k underwriting guidelines based upon reasonable professional determinations and experience of the said defendants.

123.     Plaintiffs, without knowledge of the business relationships among the defendants or of consumer mortgage lending practices generally, justifiably relied upon wrongful origination and settlement practices of the loan by Defendants.

124.     Defendants' aforesaid misrepresentations and/or omissions were false and were known or should have been known to be false when made given the gross nature of the health and safety issues discussed above.

125.     The defendants' aforesaid collective misrepresentations and/or omissions were material in nature, and were made with the intent to deceive, defraud and/or induce plaintiff to take the loan as part of a scheme to trap plaintiffs into purchasing and renovating an otherwise unsaleable property in the 203k transaction.

126.     Plaintiffs would not have entered into the transaction had Defendants accurately disclosed all material information.

127.     Defendants' conduct as described heretofore was reckless, outrageous, willful, and wanton.

128.     Plaintiff was damaged by the aforesaid acts of and among Defendants in the principal amount of the loan plus the value of home repairs it can never recapture given the cost of future repairs and the market value of the property, damaged credit, and emotional distress and personal injuries resulting from the fraudulent loan and possible loss of the home in foreclosure.

## <u>COUNT IV – NEGLIGENCE PER SE</u>

129.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

130.     AnnieMac had a statutory duty of care to adequately and reasonably under the HUD/FHA Handbook to do the following:

     a.     Hire a competent Consultant in Reinhart to examine bid(s) and the work plan for renovations with borrowers and Contractor to ensure that the 203(k) loan was feasible;

     b.     Ensure Contractor was qualified by review of his licensing, experience, and references to feasibly perform the renovation work;

    c. Timely approve firing of the Consultant and the Contractor prior to their actions causing damage to the Property and endanger the health and safety of plaintiffs and their family;

    d. Timely approve authorization of draws for repair of the subject property.

131. Defendant PennyMac is also liable for the acts of the Defendants as its authorized agents and sub-agents in this matter, Defendants AnnieMac, Reinhart, Allen, and Finishers.

132. As an FHA approved 203(k) Consultant, Defendant Reinhart has a statutory duty of care to comply with the FHA requirements of preparing a Work Write-Up and Cost Estimate which first addresses health and safety issues and then address improvements desired by the borrower.

133. Defendants Allen and Finishers had a duty of care to comply with the following FHA requirements:

    a. Complete work in accordance with agreed work contract and local building codes in a workmanlike manner and avoid damage to the Property or otherwise avoid endangering the health and safety of the Property and its occupants;

    b. Financial ability to support the upfront labor and material costs for the renovation project;

    c. Obtain permits if not obtained by the borrower.

134. The Defendants negligently misrepresented to the Tichys certain material facts as summarized in ¶¶ 27-30, 42-45, 56, 62-64, 68-70, 79.

135. The Defendants intended that the Tichys would rely upon their misrepresentations and omissions of material fact and proceed with the FHA reverse mortgage which was not actually in their best interests and was not suitable for 203k given the true facts revealing that the health and safety issues existing prior to the loan being made far exceeded the then existing or improved value of the property.

136.   The Defendants knew if their representations were false that the Plaintiffs would suffer damages.

137.   The Tichys justifiably acted in reliance on the misrepresentations and omissions of the Defendants as summarized in ¶¶ 30, 73-74.

138.   The Tichys suffered damages as a result of their and the FHA's reliance upon the misrepresentations and omissions of the Defendants.

139.   All defendants have breached their duties to plaintiffs as described herein resulting in plaintiffs have incurred financial and personal injury to complete renovations to the Property which are not feasible due to the past and current condition of the Property defeating the feasibility of the Property's renovation to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan as described more fully above herein.

140.   Plaintiffs have suffered actual damages proximately caused by Defendants' negligence as alleged above.

## COUNT V - NEGLIGENT MISREPRESENTATION

141.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

142.   The conduct of the Defendant, as alleged in addition to and in the alternative, constituted separate negligent misrepresentations that were false because of the failure to exercise reasonable care or competence in obtaining or communicating information, required by statute and otherwise, concerning the past and current condition of the Property defeating the feasibility of the Property's renovation to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan as described more fully above herein.

143.   As a direct and proximate result of these negligent misrepresentations, the Plaintiffs entered into the loan and suffered damages as alleged herein.

## COUNT VI - NEGLIGENCE

144.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint.

145.   The Defendants were negligent in the following respects:

   a.   failing to institute appropriate policies and procedures to comply with the applicable laws;

   b.   failing to institute policies, train personnel, and supervise personnel regarding lawful financing of 203k loans;

   c.   failing to institute policies, train personnel, and supervise personnel regarding proper assignment and referral of third party contractors in connection with 203k loans;

   d.   failing to properly supervise its personnel and third party contractors in connection with 203k loans;

   h.   failing to properly inspect the vehicle, detect defects therein, and/or report said defects to the Plaintiffs;

146.   Plaintiffs suffered actual damages proximately caused by Defendants' negligence as alleged above.

147.   The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to plaintiffs' indivisible harm and damages more fully described above and below, and render the defendants joint and severally liable to the plaintiffs.

## COUNT VII – LOSS OF CONSORTIUM

148.   Plaintiffs incorporate the allegations all prior paragraphs by reference.

149.    As a result of the wrongful acts of Defendants, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

150.    All the aforesaid injuries and damages were caused solely and proximately by the Defendants.

## COUNT VIII
## BREACH OF CONTRACT

151.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

152.    Plaintiffs ostensibly and apparently contracted with defendants for the purchase and renovation of the Property via a 203k loan.

153.    Plaintiffs have performed or satisfied all of their obligations under the purchase and loan agreement at issue herein.

154.    Defendants are in breach of the aforementioned contract in that they have in the past and continue without justification to negligently, intentionally, willfully, fraudulently, and/or recklessly failed and/or refused to deliver to plaintiffs the loan and renovations for which plaintiff contracted due to the Property's renovation not being economically feasible to bring it within HUD/FHA Minimum Property Standards supporting a 203(k) loan as described more fully above herein.

155.    As a result of defendants' breach, the plaintiffs suffered damages as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in their favor and against Defendants, individually, jointly and/or severally, for the following:

a. For fraud and/or violation of the UTPCPL and loss of consortium or, in the alternative, negligence, negligent misrepresentation, and negligence per se, actual damages for personal injury, emotional distress for feared loss of their home and damage to their credit and compensatory damages for financial losses due;

b. Treble financial damages pursuant to the UTPCPL;

c. Costs of litigation and reasonable attorney's fees pursuant to the UTPCPL;

d. Punitive damages for fraud; and

e. Such other and further relief as the Court deems proper.

/s/Robert P. Cocco
ROBERT P. COCCO, P.C.
Attorney for Plaintiff
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200

**WEISBERG LAW**
Matthew B. Weisberg, Esquire
Attorney Id:  85570
7 South Morton Ave.
Morton, PA  19070
610-690-0801
mweisberg@weisberglawoffice.com

Dated: August 12, 2019                    Attorneys for Plaintiffs