**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT TICHY and CORALINA TICHY, | : Civil No. 4:19-CV-01385 :  : |
| Plaintiffs, | : : : |
| v. | : : |
| THOMAS REINHART, *et al.*, | : : |
| Defendants. | : Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is an action for fraud, negligence, negligent misrepresentation, loss of consortium, breach of contract, violation of the Real Estate Settlement Procedures Act ("RESPA"), and violations of Pennsylvania's Unfair Trade Practice Consumer Protection Law ("UTPCPL") and Home Improvement Consumer Protection Act ("HICPA"). The claims arise from Defendants' allegedly wrongful conduct in connection with a government loan that Plaintiffs obtained to purchase a home. Before the court are two motions to dismiss and Plaintiffs' motion for leave to file a fourth amended complaint. (Docs. 39–40, 47.) For the reasons that follow, Plaintiffs' motion for leave to file a fourth amended complaint is granted in part and denied in part and both motions to dismiss are denied as moot.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Robert and Coralina Tichy initiated this case through the filing of a complaint on August 9, 2019. (Doc. 1.) Plaintiffs amended their complaint on

August 12, 2019.  (Doc. 3.)  On October 1, 2019, the parties filed a stipulation to allow Plaintiffs to file a second amended complaint.  (Doc. 25.)  United States District Judge Matthew W. Brann approved the stipulation on October 7, 2019, and the second amended complaint was filed on the same day.  (Docs. 26–27.)

Plaintiffs filed a motion for leave to file a third amended complaint on October 15, 2019, seeking leave to add a claim under RESPA to their complaint.  (Doc. 30.)  The parties subsequently filed a stipulation consenting to Plaintiffs filing a third amended complaint on October 22, 2019.  (Doc. 35.)  Judge Brann approved the stipulation later that day, and the third amended complaint was then filed on October 23, 2019.  (Docs. 37–38.)

According to the allegations in the third amended complaint, Plaintiffs applied for a loan with Defendant American Neighborhood Mortgage Acceptance Company, LLC ("AnnieMac") to purchase a home in August 2017.  (Doc. 38 ¶ 26.)  The following month, Plaintiffs met with Defendant Thomas Reinhart ("Reinhart"), whom the Plaintiffs had designated as their consultant to determine

whether the property was eligible for a 203(k) loan[1] from AnnieMac.[2]  (*Id.* ¶ 33.)  Reinhart inspected the property and prepared a work write-up describing $60,000 worth of work that needed to be done on the property.  (*Id.* ¶ 34.)  Plaintiffs then contracted with Defendant Damon C. Allen ("Allen") to perform the work described in Reinhart's write-up.  (*Id.* ¶¶ 35–36.)

      Plaintiffs closed on a 203(k) loan with AnnieMac on December 20, 2017, which then assigned ownership of its interest in the loan to Defendant PennyMac Loan Services, LLC ("PennyMac").  (*Id.* ¶¶ 31–32.)  Allen commenced work on the property on January 4, 2018.  (*Id.* ¶ 37.)  Reinhart submitted two requests for payment to AnnieMac in February 2018 based on work Allen had done on the property.  (*Id.* ¶¶ 38–39.)  AnnieMac refused to make the first requested payment because Allen had failed to secure a necessary electrical permit prior to completing the work.  (*Id.* ¶ 40.)  The property was then inspected by county code enforcer Steve Bielski, who reported widespread electrical wiring issues on the property to

---

[1] The court takes judicial notice that Section 203(k) is a mortgage insurance program managed by the United States Department of Housing and Urban Development that "enables homebuyers and homeowners to finance both the purchase (or refinancing) of a house and the cost of its rehabilitation through a single mortgage or to finance the rehabilitation of their existing home." *See 203(k) Rehab Mortgage Insurance*, HUD, https://www.hud.gov/program_offices/housing /sfh/203k/203k--df#:~:text= Section%20203(k)%20insurance%20enables,and%20 important%20need%20for%20homebuyers (last visited June 25, 2020).

[2] According to the third amended complaint, the 203(k) loan program requires a lender to select a consultant to visit the subject property with the borrower and then prepare a work write-up and feasibility study outlining the scope of work that needs to be done on the property so as to ensure that the 203(k) loan is sufficient to complete the work and satisfy all applicable property, health, and safety standards.  (Doc. 38 ¶¶ 14 –15.)

AnnieMac. (*Id.* ¶¶ 41–43.)  These issues were not previously detected by Reinhart when he inspected the property. (*Id.* ¶ 44.)  Based on Reinhart's failure to properly inspect the property and detect the widespread electrical wiring issues, Plaintiffs asked AnnieMac to replace Reinhart as consultant. (*Id.* ¶ 45.)

AnnieMac refused to release funds from the loan to pay for the corrective electrical work and instead required Allen to advance labor and materials to complete the work. (*Id.* ¶ 46.)  Plaintiffs advised AnnieMac that Allen would be unable to do so and requested that AnnieMac terminate Allen as the contractor on the property. (*Id.* ¶ 47.)  AnnieMac refused to replace Allen as contractor and instead advised Plaintiffs "to do what they had to do" to sufficiently accomplish the work to pass inspection. (*Id.*)  Following AnnieMac's refusal to replace Allen, Plaintiffs advanced $11,000 to Allen to complete the necessary work. (*Id.* ¶ 48.)  Reinhart approved two requests for payment to Allen on March 12, 2018. (*Id.* ¶ 49.)

AnnieMac terminated Reinhart as 203(k) consultant on March 12, 2018, following numerous written complaints by Plaintiffs that Reinhart had failed to ensure compliance with 203(k) standards. (*Id.* ¶ 50.)  Reinhart's failure to inspect Allen's work led to over $10,000 of electrical work that was nonfunctional and did not comply with local building codes. (*Id.* ¶ 51.)  AnnieMac named Steven DePaul ("DePaul") as the new 203(k) consultant on March 13, 2018. (*Id.* ¶ 52.)  DePaul

subsequently approved a draw request from the loan to pay Allen $11,221 for drywall work that he had performed.  (*Id.* ¶ 53.)

On April 3, 2018, Plaintiffs paid for the necessary materials that Allen had refused to pay for so as to ensure completion of the renovations by the contract date of June 1, 2018.  (*Id.* ¶ 54.)  After that date, Allen failed to do any further work on the property, only showing up to use the dumpster at the property.  (*Id.* ¶ 55.)  Plaintiffs discovered numerous issues caused by Allen's work, which, among other things, led to their two-year-old daughter being shocked by a defective electrical outlet that Allen had installed.  (*Id.* ¶ 57.)  Plaintiffs obtained approval from AnnieMac to terminate Allen as contractor, and did so on May 10, 2018.  (*Id.* ¶¶ 58–59.)

Given the short time frame to complete the work before the contract date, Plaintiffs obtained permission to complete the work themselves.  (*Id.* ¶¶ 60–61.)  DePaul inspected the property on May 19, 2018, and concluded that Allen's electrical work was not performed to code, that Allen's drywall installation would have to be torn out and redone, and that Allen had performed improper plumbing and framing work that would also have to be repaired.  (*Id.* ¶ 64.)  DePaul concluded that Allen was not due any further funds under the loan.  (*Id.* ¶ 65.)

Plaintiffs obtained an extension to complete the renovations on the property until August 20, 2018.  (*Id.* ¶ 67.)  Plaintiffs took off approximately sixty days

from their respective jobs, borrowed approximately $30,000 from family members, and charged approximately $40,000 to their credit cards to repair the defective work that Allen had done.  (*Id.* ¶ 68.)  AnnieMac provided written approval to Plaintiffs to engage in self-help work on the property, and Plaintiffs subsequently performed extensive work on the property.  (*Id.* ¶¶ 69, 74.)

On June 25, 2018, Plaintiffs made a draw request on the loan for $31,000.  (*Id.* ¶ 70.)  AnnieMac denied the request because Allen had called AnnieMac and claimed that he was still due further payment for his work.  (*Id.* ¶ 71.)  AnnieMac reasoned that Allen's request for payment could result in a lien on the property, and accordingly refused Plaintiffs' request on that basis.  (*Id.*)  AnnieMac required Plaintiffs to retain counsel to pursue legal action against Allen to confirm that no further funds were due to be paid to him.  (*Id.* ¶ 72.)  AnnieMac approved an $11,000 draw from the loan to pay for the counsel.  (*Id.*)  Because of AnnieMac's refusal of Plaintiffs' $31,000 draw request, Plaintiffs were unable to continue paying rent on the property they were then living in and were forced to move into the subject property before the renovations were complete.  (*Id.* ¶ 73.)

In August 2018, Plaintiffs discovered additional issues with the property caused by Allen's defective work.  Most notably, the basement of the property flooded because of Allen's failure to connect the property's plumbing to the septic system and because of damage Allen had caused to the property's septic pipes.

(*Id.* ¶ 75.)  Plaintiffs' homeowner's insurance company refused to cover the damage because of a policy exclusion for defective contractor work, and Allen's insurer also refused to cover the damage.  (*Id.* ¶ 76.)  Plaintiffs had the damage inspected by two different septic system companies, both of which found significant damage that would require the installation of a sand mound system at a cost of approximately $30,000.  (*Id.* ¶ 78.)

On July 5, 2018, Plaintiffs requested via email that AnnieMac release the balance of the renovation funds under the loan to reimburse them for their out-of-pocket expenses.  (*Id.* ¶ 81.)  Plaintiffs made similar requests via email and attached letter on December 9, 2018 and December 11, 2018.  (*Id.* ¶ 82.)  AnnieMac refused to release the funds due to concerns of legal action by Allen. (*Id.* ¶ 83.)

Based on the Defendants' actions, Plaintiffs raise nine counts for relief: violation of the UTPCPL and HICPA (Count I); fraud (Count II); conspiracy to commit fraud (Count III); negligence per se (Count IV); negligent misrepresentation (Count V); negligence (Count VI); loss of consortium (Count VII); breach of contract (Count VIII); and violation of RESPA (Count IX).  (*Id.* ¶¶ 97–165.)

PennyMac moved to dismiss the third amended complaint on November 6, 2019.  (Doc. 39.)  Reinhart filed a separate motion to dismiss on November 13,

2019. (Doc. 40.) The case was reassigned from Judge Brann to the undersigned pursuant to a verbal order from Judge Brann on November 25, 2019. Shortly thereafter, Plaintiffs filed a motion for leave to file a fourth amended complaint. (Doc. 47.) That motion and both motions to dismiss have been fully briefed and are ripe for the court's review.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims that are so closely related to federal claims as to be part of the same case or controversy.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

A plaintiff seeking to amend a complaint more than twenty-one days after service of a responsive pleading must obtain the consent of the opposing party or leave of the court to do so. Fed. R. Civ. P. 15(a)(1)(B). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court may deny leave to amend, however, where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). "Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'" *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)). "In assessing futility, the district court applies the same standard of

legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## DISCUSSION

### A. Plaintiffs' Motion for Leave to File a Fourth Amended Complaint Is Granted in Part and Denied in Part

In their motion for leave to amend, Plaintiffs seek leave to (1) add a RESPA claim against PennyMac, (2) allege the same facts underlying its proposed RESPA claims as facts supporting its common law and unfair trade practices claims against PennyMac, and (3) "otherwise amplify the statutory basis for defendants' legal duties regarding origination and implementation of 203(k) loans under the National Housing Act." (Doc. 47 at 1.) Plaintiffs also seek to dismiss their conspiracy to commit fraud claim without prejudice. (*Id.* at 3.)

Reinhart opposed the motion for leave to amend on December 18, 2019. (Doc. 51.) Reinhart argues that further amendment would be futile because the deficiencies that Reinhart identifies in his motion to dismiss "have not been cured in the proposed amended pleading." (*Id.* at 5.) "As such," Reinhart argues, "the proposed amended pleading still fails to state a claim upon which relief can be granted." (*Id.*)

PennyMac also opposed the motion for leave to amend on December 18, 2019. (Doc. 52.) PennyMac argues that amendment would be futile because the facts alleged in the proposed fourth amended complaint are insufficient to state a

RESPA claim against PennyMac upon which relief may be granted. (*Id.* at 7.) Beyond the RESPA claim, PennyMac argues that "Plaintiffs' remaining amendments are equally futile because they do not cure or materially alter" the legal defects in the third amendment complaint. (*Id.*)

RESPA is "designed to give home-buyers access to more information about their home mortgages so that they may protect themselves from any fraudulent or deceptive practices by their mortgage loan servicers." *Wotanis v. PNC Bank, N.A.*, No. 3:19-CV-00588, 2019 WL 4054880, at *3 (M.D. Pa. Aug. 28, 2019).

Under RESPA, a mortgage loan servicer is required to take certain actions upon receiving a "qualified written request" from a borrower. 12 U.S.C. § 2605(e). Within five days of receiving the qualified written request, the servicer must provide a "written response" to the borrower "acknowledging receipt" of the qualified written request. *Id.* § 2605(e)(1)(A). In addition, within thirty days of receiving the qualified written request, the servicer must, where applicable:

> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>> **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2).

Plaintiffs' proposed RESPA claim against PennyMac is based on a series of emails Plaintiffs sent to Defendants AnnieMac and PennyMac in 2018. Plaintiffs allegedly emailed AnnieMac on July 5, 2018, requesting that AnnieMac release the balance of renovation loan funds to reimburse Plaintiffs for costs arising from the Defendants' wrongful actions. (Doc. 47-2 ¶ 82.) On December 9, 2018, Plaintiffs sent an email and attached letter to the Consumer Financial Protection Bureau ("CFPB"), disputing AnnieMac's accounting of their loan. (*Id.* ¶ 83.) Plaintiffs then sent an email and attached letter to PennyMac on December 11, 2018 in which they "reiterated the content of the CFPB disputed and also disputed Defendant PennyMac's failure as the loan's servicer to release the balance of renovation loan funds to reimburse plaintiffs for out of pocket outlays work

performed due to the foregoing malfeasance and misfeasance of AnnieMac and other defendants." (Doc. 47-2 ¶ 84.)

AnnieMac responded to Plaintiffs' email by instructing them that any dispute over the undisbursed renovation loan funds would have to be brought through arbitration. (*Id.* ¶ 85.) PennyMac did not respond directly to Plaintiffs' email and attached letter, and only responded to the CFPB letter after it was transmitted from the CFPB. (*Id.* ¶¶ 87–88.) In its response to the CFPB letter, PennyMac deferred to and adopted AnnieMac's earlier position that any disputes over the disbursement of funds would have to be brought through arbitration. (*Id.* ¶ 89.) Both PennyMac and AnnieMac refused to release the renovation loan funds. (*Id.* ¶¶ 90–91.)

Plaintiffs allege that PennyMac violated RESPA because PennyMac failed to respond to a qualified written request, because PennyMac failed to make appropriate corrections to Plaintiffs' account, because PennyMac failed to provide written explanation or clarification regarding its investigation into Plaintiffs' complaints, and because PennyMac continued to report negative payment history to credit reporting agencies while Plaintiffs' qualified written request was pending. (*Id.* ¶ 161.)

PennyMac argues that the proposed RESPA claim against it is futile because the facts alleged in the proposed complaint show that a qualified written request

was not delivered to PennyMac as required to support a RESPA claim, that the request that was sent was insufficient to trigger a legal obligation by PennyMac, and that the alleged violation of RESPA did not cause Plaintiffs any damage. (Doc. 52 at 7.))

The court agrees with PennyMac that the proposed RESPA claim is futile. Under RESPA's implementing regulations, "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to assert an error." 12 C.F.R. § 1024.35(c). This section specifically applies to qualified written requests under 12 U.S.C. § 2605. *See* 12 C.F.R. § 1024.35(c) ("A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section. . . .").

Although the Third Circuit has not addressed whether a borrower's failure to send a qualified written request to the address that the lender has designated under 12 C.F.R. § 1024.35(c) constitutes grounds for dismissal of a RESPA claim, every other circuit that has addressed the issue has concluded that a RESPA claim should be dismissed for such a failure. *See Heyman v. Citimortgage, Inc.*, No. 14-CV-01680, 2019 WL 2642655, at *35 (D.N.J. June 27, 2019) (collecting cases). District courts in this circuit have also generally held that the failure to send a

qualified written request to the designated address constitutes grounds for dismissal of a RESPA claim. *See id.* at *38 (finding that qualified written requests that were not sent to the designated address did not trigger lender's duties under RESPA); *Vilkofsky v. Rushmore Loan Mgmt. Servs., LLC*, No. 16-CV-01291, 2019 WL 1407284, at *11 (W.D. Pa. Mar. 28, 2019) (granting summary judgment to lender where borrower did not send qualified written requests to designated address); *Binder v. WestStar Mortg., Inc.*, No. 14-CV-07073, 2016 WL 3762710, at *8 (E.D. Pa. July 13, 2016) (holding that email sent from borrower to lender "was nothing more than general correspondence between borrower and servicer, the receipt of which did not trigger RESPA duties").[3] The court agrees with the weight of authority that a borrower's failure to send a qualified written request to a borrower's designated address constitutes grounds for dismissing the borrower's RESPA claim.

---

[3] An earlier decision of the Eastern District, *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 363–65 (E.D. Pa. Jan. 7, 2013), held that the dispositive question was not whether a qualified written request was sent to the designated address, but rather whether the lender ultimately received the qualified written request. That decision, however, was based on an earlier version of RESPA's implementing regulations which did not, by its plain language, require a borrower to send a qualified written request to a designated address. *Id.* at 364 ("nowhere in the plain language of 12 U.S.C. § 2605(e) or 24 C.F.R. § 3500.21(e)(1), *supra,* is a borrower required to send his requests to a loan servicer's specified address; the law simply allows a loan servicer to establish such a place."). That is no longer a viable reading of the regulations. Under § 1024.35, "[a] servicer may, by written notice provided to a borrower, establish an address that *a borrower must use to submit a notice of error* in accordance with the procedures in this section." (emphasis added).

In this case, the first letter that PennyMac sent to Plaintiffs contained the following passage:

> **Correspondence**: Questions about your loan, address changes, and other correspondence may be mailed to:
> PennyMac Loan Services, LLC
> Attn: Correspondence Unit
> P.O. Box 514387
> Los Angeles, CA 90051-4387
>
> Notices of error or information requests must be mailed to this address.

(*See* Doc. 47-2 at 45.)[4]  As the proposed fourth amended complaint makes clear, Plaintiffs did not mail their qualified written requests to the above address. (*See* Doc. 47-2 ¶¶ 82–84.)  Instead, Plaintiffs sent their qualified written requests via email. (*Id.*)  Thus, because Plaintiffs failed to send their qualified written requests to PennyMac's designated address as required by 12 C.F.R. § 1024.35(c), their proposed RESPA claim against PennyMac is subject to dismissal.  Amendment of their third amended complaint would therefore be futile and the court will accordingly deny Plaintiffs' motion for leave to file a fourth amended complaint to the extent that it seeks to plead a RESPA claim against PennyMac.

---

[4] The court may consider this letter because it was attached as an exhibit to Plaintiffs' proposed fourth amended complaint. *See Doe v. Univ. of the Scis*, 961 F.3d 203 (3d Cir. 2020) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))).

The court will not, however, deny the motion for leave to amend in its entirety.  The court will grant Plaintiffs leave to amend their complaint to make all proposed amendments other than adding a RESPA claim against PennyMac.  Besides the RESPA claim, Plaintiffs additionally seek leave to amend their complaint so as to allege the same facts underlying their proposed RESPA claim as facts supporting their common law and unfair trade practices claims against PennyMac and "amplify the statutory basis for defendants' legal duties regarding origination and implementation of 203k loans under the National Housing Act." (Doc. 47 at 1.)  Thus, unlike Plaintiffs' proposed RESPA claim, Plaintiffs do not seek leave to add additional claims to their complaint, but instead to add support to their already-existing claims.  Although Defendants Reinhart and PennyMac argue that such amendment would be futile because the fourth amended complaint would still suffer from the same defects as the third amended complaint, *see* Doc. 51 at 5; Doc. 52 at 7, the court finds that such arguments would be more appropriately raised on renewed motions to dismiss the fourth amended complaint, rather than in opposition to the motion for leave to amend.  Accordingly, the court will grant the motion for leave to amend except to the extent that it seeks to add a RESPA claim against PennyMac.

### B. Both Motions to Dismiss Are Moot

Having concluded that Plaintiffs' motion for leave to amend their complaint should be granted in part, the court will deny the pending motions to dismiss without prejudice as moot.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a fourth amended complaint is granted in part and denied in part and both motions to dismiss are denied as moot.

>	s/Jennifer P. Wilson
>	JENNIFER P. WILSON
>	United States District Court Judge
>	Middle District of Pennsylvania

Dated: June 30, 2020